# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1301V
UNPUBLISHED

| | |
|---|---|
| MARK PETERS, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: October 1, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Jonathan J. Svitak*, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.

*Alec Saxe*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On April 30, 2021, Mark Peters filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine received on October 1, 2020. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted to SPU Motions Day.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to **$122,000.00** for actual pain and suffering.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I.   Procedural Overview

After the claim's initiation, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. (ECF No. 30). Accordingly, on August 2, 2023, a ruling on entitlement issued in Petitioner's favor. (ECF No. 31).

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on October 3, 2023. (ECF No. 37). Petitioner filed his brief on December 5, 2023, requesting that I award him $130,000.00 in compensation for his pain and suffering. (ECF No. 39). Conversely, in a brief filed on January 22, 2024, Respondent argued that Petitioner should be awarded only $85,000.00 for past pain and suffering. (ECF No. 40). Petitioner filed a Reply brief on March 23, 2024. (ECF No. 42).

On August 25, 2025, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. (ECF No. 45). The parties agreed, and an expedited hearing took place on September 26, 2025. Minute Entry dated September 26, 2025.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

### II.   Pain and Suffering

#### A.  Legal Standard and Prior SIRVA Pain and Suffering Awards

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] Mr. Jonathan Svitak appeared on behalf of Petitioner, and Ms. Dima Atiya, appearing for undersigned counsel Alec Saxe, appeared on behalf of Respondent. The transcript of this was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

2

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by a Court of Federal Claims decision several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards – and properly emphasizes the importance in each case of basing damages on the specific injured party's circumstances.

### B. Prior SIRVA Compensation Within SPU[4]

#### i. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2025, 4,545 SPU SIRVA cases have resolved since the inception of SPU ten years before. Compensation has been awarded in the vast majority of cases (4,397), with the remaining 148 cases dismissed.

2,506 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation.[5] In only 270 of these cases, however, was the amount of damages determined by a special master in a reasoned decision.[6] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 1,891 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,206 cases) or stipulation (30 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[8] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *270* | *2,206* | *30* | *1,891* |
| **Lowest** | $30,000.00 | $5,000.00 | $45,000.00 | $1,500.00 |
| **1st Quartile** | $67,305.16 | $60,000.00 | $90,000.00 | $32,500.00 |
| **Median** | **$89,500.00** | **$80,000.00** | **$122,866.42** | **$50,000.00** |
| **3rd Quartile** | $125,000.00 | $107,987.07 | $162,000.60 | $75,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### ii.   Pain and Suffering Awards in Reasoned Decisions

In the 270 SPU SIRVA cases in which damages were the result of a reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $30,000.00 to $215,000.00, with $87,000.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one

---

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### C. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on September 26, 2025. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

For the reasons discussed below, and pursuant to my oral ruling on September 26, 2025, (which is fully adopted herein), I find that $122,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. There are several related bases for my decision.

The record establishes that Petitioner suffered a moderate injury involving surgery, albeit a case with a quicker-than-average recovery. Petitioner promptly sought treatment for left shoulder pain on October 12, 2020, only 11 days after vaccination, at which time he complained of pain levels of 8/10 and demonstrated reduced range of motion in his left shoulder. Ex. 1 at 10. Following five additional medical appointments, Petitioner was referred to physical therapy ("PT"), which he began on November 11, 2020. During his initial PT evaluation, Petitioner complained of pain which varied from 2/10 to 9/10, depending on aggravating factors. Ex. 6 at 89-90.

6

Petitioner completed 13 PT sessions between November 11 to January 19, 2020. During this period, he underwent an MRI which revealed a large posterior labral tear, intramuscular edema, minimal calcific tendinitis of the rotator cuff, supraspinatus, infraspinatus, and subscapularis tendinosis, tendinosis of the intra-articular portion of the long head of the biceps tendon, lateral down-sloping type 1 acromion and early left acromioclavicular arthrosis, along with incipient subacromial/subdeltoid bursitis. Ex. 7 at 59-60. Additionally, on December 29, 2020, Petitioner received a subacromial steroid injection. *Id.* at 136-38. When he was discharged from PT, Petitioner reported that since a week after receiving the injection, he had been essentially pain free and he demonstrated full range of motion.

Ultimately, Petitioner's relief only lasted for a few weeks before the effects of the steroid injection wore off, and Petitioner subsequently reported pain of 1/10 at best and 4/10 at worst. Ex. 6 at 179. After consulting with his treaters, Petitioner elected to proceed with surgery. On April 9, 2021, Petitioner underwent a left shoulder arthroscopy, limited labral debridement, subacromial bursectomy coupled with subacromial decompression. Surgical findings confirmed degenerative labral tearing posterior inferior with no associated synovitis, somewhat reactive bursa with tyle II acromial configuration. Ex. 8 at 33-35.

On April 12, 2021, Petitioner began post-operative PT, which lasted for 16 sessions until July 8, 2021. Ex. 7 at 45-46. At the beginning, Petitioner indicated his pain ranged between 1/10 and 7/10, depending on what he was doing. Ex. 6 at 179-185. When Petitioner was discharged from his final PT session, he reported pain of 1/10 at best and 4/10 at worst. *Id.* at 45-48. That marked the end of Petitioner's course of treatment. On August 8, 2023, Petitioner executed an affidavit in which he indicated he still feels occasional pain when lifting overhead or moving heavy objects, and that he has had to modify activities such as going to the gym and kayaking, but he feels he can do everything he used to be able to do, and is able to manage pain flare-ups with ibuprofen and ice. Ex. 10.

Based upon all of the above, Petitioner has demonstrated entitlement to a fairly substantial award for pain and suffering award. In sum, Petitioner's treatment course lasted approximately nine months involved one surgery, one MRI, one steroid injection, and 29 PT sessions. However, the requested amount is slightly excessive.[11]

---

[11] I acknowledge that prior pain and suffering determinations are not binding on this decision. *See Nance v. Sec'y of Health & Human Servs.*, No. 06–730V, 2010 WL 3291896 at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."). These cases, however, provide persuasive guidance herein.

Petitioner has cited to several cases which all provide good comparable points to the instant case, including *Blanco v. Sec'y of Health & Hum. Servs.*, No. 18-1361V, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. Jul. 6, 2020) (awarding $135,000.00 in pain and suffering damages); *Rafferty v. Sec'y of Health & Hum. Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00); *Dobbins v. Sec'y of Health & Hum. Servs.*, No. 16-854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00); *Brantley-Karasinkski v. Sec'y of Health & Hum. Servs.*, No. 20-1058V, 2023 WL 7160919 (Fed. Cl. Spec. Mstr. Sep. 28, 2023) (awarding $125,000.00); and *Berge v. Sec'y of Health & Hum. Servs.*, No. 19-1474V, 2021 WL 4144999 (Fed. Cl. Spec. Mstr. Aug. 17, 2021) (awarding $115,000.00).

These cases provide a reasonable range out outcomes applicable herein, with *Rafferty* and *Dobbins* perhaps providing the most guidance. In *Rafferty*, although the petitioner delayed seeking treatment for 60 days initially, she presented with severe pain which was not being helped by Advil at night. At her first PT session, that claimant rated her pain at 3-7/10, similar to the instant case. *Rafferty*, 2020 WL 3495956, at *15. Additionally, her pre-surgical PT did not provide her any relief, as she continued to report moderate-to-severe pain throughout. *Id.* Following 21 additional PT sessions and 24 rehabilitation-focused exercise classes, any pain reported was minimal. *Id.* Overall, compared to the instant case, the *Rafferty* petitioner's course of treatment was slightly longer, and she described more challenging personal circumstances, having to be the primary caretaker for her two sons, one of who has autism. *Id.* at 17. In sum, the instant case is slightly less severe overall and therefore a slightly lesser sum is appropriate.

Similarly, the *Dobbins* petitioner initially complained of moderate to severe pain, ranging from 2/10 at rest to 8/10 with motion, and also received one steroid injection with minimal lasting value. *Dobbins*, 2018 WL 4611267, at *2. Also similar to the instant case was the relatively short duration of treatment course, with that claimant having been vaccinated in September 2015 and recovered by July 2016. *Id.* at *12. The *Dobbins* petitioner, however, had a more rigorous treatment course during that time, with over 30 PT sessions and multiple acupuncture sessions, and she also had to take care of her terminally ill mother, which was made more difficult due to her shoulder injury. *Id.* at 12. As with *Rafferty*, a slightly lesser award in the instant case is justified.

Respondent has also offered cases he believes are comparable to the instant case: *Buckley v. Sec'y of Health & Hum. Servs.*, No. 19-1602V, 2023 WL 345661 (Fed. Cl. Spec. Mstr. Jan. 20, 2023) (awarding $103,500.00 in pain and suffering damages); *McKay v. Sec'y of Health & Hum. Servs.*, No. 21-71V, 2023 WL 9231565 (Fed. Cl. Spec. Mstr. Dec. 11, 2023) (awarding $127,500.00); *Hunt v. Sec'y of Health & Hum. Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. Jun. 16, 2022) (awarding $95,000.00);

and *Fortney v. Sec'y of Health & Hum. Servs.*, No. 20-1471V, 2025 WL 835601 (Fed. Cl. Spec. Mstr. Jan. 29, 2025) (awarding $75,000.00).

Of these cases, only *McKay* proves to be an apt comparison. That claimant endured a far longer injury period, approximately 31 months with pain levels that fluctuated from mild to severe, with the worst pain at the start of her injury. *McKay*, 2023 WL 92311565, at *9. That petitioner also waited a substantially longer time before undergoing surgery, approximately 20 months. As noted at the oral argument, this information cuts both ways for Petitioner – although delaying surgery necessarily leads to a more prolonged treatment course, it can also be indicative of an overall less severe injury, as it demonstrates that a petitioner is able to live with their condition for a longer period of time. Ultimately, it was determined that the *McKay* petitioner suffered an injury roughly similar to the one in *Rafferty*, and was therefore entitled to an identical pain and suffering award. *Id.* As noted above, I have found the injury in the instant case to be slightly less severe than the one in *Rafferty*.

Respondent's other cases offer less help in the way of comparables. Although Respondent devoted a substantial amount of time discussing *Fortney* at the oral argument to support his proposed award, that case presents markedly different circumstances. In *Fortney*, the treatment course involved several long gaps and although the petitioner ultimately underwent surgery, the postoperative diagnosis was that there was no evidence of rotator cuff tear and that the petitioner instead had a torn superior labrum SLAP tear, which is not the kind of injury that can be SIRVA-attributed. *Fortney*, 2025 WL 835601, at *8. The overall injury was also milder than the instant case, involving lesser pain levels and fewer sessions of PT. *Id.*

Overall, I find the instant case to present a SIRVA injury comparable, but ultimately less severe than the ones seen in *Rafferty, Dobbins, and McKay*. Therefore, based on my consideration of all relevant factors, I find that $122,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.

## Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $122,000.00, representing reimbursement for actual pain and suffering.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
